## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

USDC- GREENBELT
'23 AUG 28 PM 2:26

AV

BRYAN SHEPPARD,                    )
                                   )
        Plaintiff,                 )
                                   )          Civil Action No.: LKG-22-951
v.                                 )
                                   )          Dated: August 28, 2023
MICHAEL GAVIGAN, and,              )
OFFICER S. EIGBOKHAN,              )
                                   )
        Defendants.                )
_____)

### MEMORANDUM

Self-represented Plaintiff Bryan Sheppard filed his Complaint in this civil rights action against Michael Gavigan, alleging that he assaulted Sheppard while escorting him through the prison and Officer S. Eigbokhan, alleging that he stole a television and radio from Sheppard. ECF No. 1. On December 19, 2022, Eigbokhan moved to dismiss the Complaint or, in the alternative, for summary judgment. ECF No. 18. Sheppard filed his response in opposition on December 29, 2022. ECF No. 22. On February 17, 2023, Gavigan separately moved to dismiss the Complaint, or in the alternative, for summary judgment. ECF No. 25. Sheppard responded in opposition to Gavigan's motion on March 6, 2023, and Gavigan filed a supplemental memorandum on March 14, 2023. ECF Nos. 27-28.[1] The Court finds that a hearing is not necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons discussed below, Eigbokhan's Motion will be granted, and Gavigan's Motion will be granted in part and denied in part.

### I.  BACKGROUND

In his Complaint, Sheppard alleges that on December 4, 2021, he was handcuffed and waiting to be escorted to medical when Eigbokhan gave him a rules violation ticket. ECF No. 1 at 4. As he was being escorted to medical, he was passed off to Gavigan who assaulted him while he was "completely defenseless" and still in handcuffs. *Id.* Sheppard alleges that he

---

[1] Sheppard filed correspondence directed to the Clerk of Court as well as copies of several documents regarding his attempts to exhaust his administrative remedies. ECF Nos. 27, 27-1. The Court construes this correspondence as a response in opposition to Defendant Gavigan's dispositive motion.

suffered injuries to his shoulder and ankle and that his shoes and clothes were damaged. ECF
No. 1 at 5. Sheppard further alleges that Eigbokhan stole his television and radio while packing
his property to be moved. *Id.* Sheppard seeks monetary damages and for "the officers involved
to be held accountable." *Id.*

Sheppard states that he submitted grievances through the administrative remedy
procedure ("ARP") process and his allegations are under investigation by the Intelligence and
Investigative Division ("IID"). ECF No. 1 at 7. He does not specify which allegations are under
investigation, however, he attaches a copy of an appeal to the Commissioner of Correction
regarding the alleged assault by Gavigan which indicates it was dismissed because the case was
referred to IID. ECF No. 27-1. Sheppard also submitted a copy of an ARP appeal regarding the
allegedly stolen property which directed him to file additional paperwork, as well as two copies
of letters from the Office of the Commissioner directing him to provide further information. *Id.*
at 3-5. Finally, Sheppard submitted a copy of a letter he wrote to the Commissioner of
Correction explaining his difficulty in obtaining the information requested. ECF No. 22-1 at 2.
Eigbokhan and Gavigan each submitted a declaration from Robin Woolford, Deputy Director of
the Inmate Grievance Office ("IGO"), stating that Sheppard has not filed any grievances with the
IGO. ECF Nos. 18-3 and 25-3.

## II.   STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil
Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to
relief above the speculative level . . . on the assumption that all the allegations in the complaint
are true (even if doubtful in fact)[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)
(citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to
prove the elements of the claim…However, the complaint must allege sufficient facts to establish
those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Defendants' Motions are styled as motions to dismiss under Fed. R. Civ. P. 12(b)(6) or,
in the alternative, for summary judgment under Fed. R. Civ. P. 56. ECF Nos. 18, 25. Motions
styled in this manner implicate the Court's discretion under Rule 12(d) of the Federal Rules of
Civil Procedure. *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp.
2d 431, 436-37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment
under Rule 12(d) is permissible where plaintiff has "actual notice" that the motion may be

disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the Court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the Court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261. Because the Motions are titled as motions to dismiss, or in the alternative, for summary judgment, Sheppard was on notice that the Court could treat them as motions for summary judgment and rule on that basis.

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Henry v. Purnell*, 652 F.3d 524, 548 (4th Cir. 2011)). Accordingly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

A court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)). The Court is mindful that Sheppard is a self-represented litigant. A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But liberal construction does not mean a court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). A court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

### III.    DISCUSSION

#### A.    Exhaustion of Administrative Remedies

Eigbokhan and Gavigan each raise the affirmative defense that Sheppard has failed to exhaust his administrative remedies.  If Sheppard's claims have not been properly presented through the administrative remedy procedure they must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e.  The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h).  The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. Appx. 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner.  Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017).  Nevertheless, a claim that has not been exhausted may not be considered by this Court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory. *Ross v. Blake*, 578 U.S. 632, 639 (2016).  Therefore, a court ordinarily may not excuse a failure to exhaust. *Ross*, 578 U.S. at 639 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F.Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory.").  Exhaustion requires completion of "the administrative review process in

4

accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006).  This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original).  But the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aguilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

In Maryland prisons, the ARP is the administrative process that must be exhausted.  Md. Code Regs. § 12.02.28.02(B)(1), (D) (2018).  First, a prisoner must file an ARP with the warden within 30 days of the incident at issue.  Md. Code Regs. § 2.02.28.05(D)(1) (requiring filing with the "managing official"); Md. Code Regs. § 12.02.28.02(B)(14) (defining "managing official" as "the warden or other individual responsible for management of the correctional facility"); Md. Code Regs. § 12.02.28.09(B) (setting the 30-day deadline).  Second, if the ARP is denied, or the inmate does not receive a timely response, a prisoner must file an appeal with the Commissioner of Correction within 30 days.  Md. Code Regs. § 12.02.28.14(B)(5).  If the appeal is denied, the prisoner must appeal within 30 days to the Inmate Grievance Office ("IGO").  *See* Md. Code. Ann., Corr. Servs. §§ 10-206, 10-210; Md. Code Regs. § 12.07.01.05(B).  Inmates may seek judicial review of the IGO's final determinations in a Maryland Circuit Court.  *See* Md. Code Ann., Corr. Servs. § 10-210(a).

However, an inmate need only exhaust "available" remedies.  42 U.S.C. § 1997e(a).  In *Ross v. Blake*, 578 U.S. 632 (2016), the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." *Id.* at 635.  In particular, it rejected a "special circumstances" exception to the exhaustion requirement.  *Id.*  But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id.* at 636.  "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette,* 517 F.3d 717, 725 (4th Cir. 2008).

The Supreme Court stated in *Ross* that an administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" 578 U.S. at 642 (quoting *Booth*, 532 U.S. at 738).  Thus, an inmate must complete the prison's internal appeals process, if possible, before bringing suit.  *See Chase*, 286 F. Supp. 2d at 529-30.  As a prisoner, Sheppard is

5

subject to the strict requirements of the exhaustion provisions. *See Porter*, 534 U.S. at 528 (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). Exhaustion is also required even though the relief sought is not attainable through resort to the administrative remedy procedure. *See Booth*, 532 U.S. at 741.

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 643-44. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

## 1.      Eigbokhan

Sheppard contends that Eigbokhan stole his television and radio. ECF No. 1 at 4. In support of his affirmative defense that Sheppard has not exhausted his administrative remedies as to this claim, Eigbokhan submits the declaration of Robin Woolford, Director of the IGO, who avers that Sheppard has not filed any grievances with the IGO regarding this or any other issue. ECF No. 18-3. In response, Sheppard submitted a copy of an appeal of an ARP to the Commissioner of Correction regarding Eigbokhan alleging stealing his property. ECF No. 22-1 at 5. However, Sheppard does not present any evidence to refute Director Woolford's declaration that he failed to appeal the ARP to the IGO in order to complete the administrative remedies process, nor does he allege that he was prevented from doing so in any way. Therefore, the evidence shows that Sheppard failed to exhaust his administrative remedies as to his Complaint against Eigbokhan.[2] The Complaint against him will be dismissed without prejudice for failure to exhaust administrative remedies.

---

[2] Even if he had exhausted his administrative remedies, Sheppard likely fails to state a claim as to Eigbokhan's alleged theft of his property. The United States Supreme Court has held that claims of negligent deprivation of property by a prison official do not implicate the Due Process Clause. *See Daniels v. Williams*, 474 U.S. 327, 335-36 (1986). A claim of intentional deprivation of property by a

2.      **Gavigan**

Sheppard alleges that Gavigan assaulted him while he was handcuffed and being escorted to medical. ECF No. 1 at 4. In support of his affirmative defense that Sheppard has not exhausted his administrative remedies as to this claim, Gavigan presents the declaration of IGO Deputy Director Woolford, who states that Sheppard has not filed an IGO grievance regarding this or any other claim. ECF No. 25-3. In response, Sheppard submitted a copy of an ARP regarding the alleged assault; the response states that the matter is being referred to IID, and no further action will be taken under the ARP process. ECF No. 27-1 at 2. The response advises Sheppard that he may appeal the decision to the Commissioner of Correction. *Id.* In addition, Sheppard submits a copy of his appeal to the Commissioner of Correction, which was stamped "[d]ismissed for procedural reasons: Final per C.O.M.A.R 12.02.28.11.B.(1)(h) This issue is being investigated by IID. Case number 22-25-0089." ECF No. 27-1 at 1. The response from the Commissioner of Correction did not advise Sheppard regarding any right to appeal. *Id.*

Courts in this District have repeatedly found that an IID investigation renders claims either exhausted or unavailable. *See, Battle v. Bishop*, Civil Action No. GJH-19-2966, 2021 WL 1174693, at *9 (D. Md. March 29, 2021) (citing *Stokes v. Davis*, No. CV JKB-16-3239, 2018 WL 656445, at *10 (D. Md. Feb. 1, 2018) ("[S]ome procedures were unavailable to [the plaintiff] due to the Defendants' misrepresentation that an IID investigation into his allegations was underway."); *Toran v. Leply*, No. CV DKC-16-3731, 2017 WL 2645727, at *4 (D. Md. June 20, 2017) ("There is no indication in either the regulations or in the response provided to Toran that further efforts to address his ARP claim would resume after the IID investigation was terminated, or that an appeal of his ARP complaint would not simply be dismissed. In light of these considerations, this court does not find dismissal without prejudice on the basis that Toran did not exhaust administrative remedies legally sound or well-reasoned."); *Oakes v. Dep't of Pub. Safety*, No. CV GLR-14-2002, 2016 WL 6822470 at *5 (D. Md. Nov. 18, 2016) ("At bottom, the Court concludes [the plaintiff] exhausted his administrative remedies because an IIU[3] investigation into

---

prison official also would not state a constitutional due process claim, provided that the prisoner has access to an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Tydings v. Dep't of Corrections*, 714 F.2d 11, 12 (4th Cir. 1983) (finding that Virginia law provides for an adequate post-deprivation remedy).

[3] The Internal Investigative Unit ("IIU") is the precursor to the IID. See *Battle*, 2021 WL 1174693, at *8 n.13 (citing *Montgomery v. Warden*, Civil Action No. ELH-15-3005, 2017 WL 6368661, at *4 (D. Md.

[the plaintiff's] claims foreclosed the ARP process, rendering his administrative remedies unavailable."); *Brightwell v. Hershberger*, No. CV DKC 11-3278, 2016 WL 4537766, at \*9 (D. Md. Aug. 31, 2016) ("Because the existence of an IIU investigation shuts down the ARP process and thus exhausts administrative remedies for complaints that would typically fall within the ARP jurisdiction, Plaintiff met his burden to exhaust upon the initiation of that investigation.")).

Here, Sheppard's appeal to the Commissioner of Correction was dismissed because the case was referred to the IID.  ECF No. 27-1.  The response included an IID case number and did not include any indication that Sheppard had a right to appeal the dismissal.  As Sheppard's ARP was dismissed because the issue had been referred to IID with no apparent opportunity to appeal, his administrative remedies can be considered exhausted as to Gavigan's alleged assault on him. Gavigan's Motion will be denied as Sheppard has exhausted his administrative remedies.[4]

**B. Eleventh Amendment Immunity**

Gavigan argues that the Complaint must be dismissed against him in his official capacity because he is immune under the Eleventh Amendment.  ECF No. 25-2 at 7.  Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and departments are immune from citizen suits in federal court absent state consent or Congressional action.  *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Claims against state employees, such as Gavigan, acting in their official capacities are also subject to Eleventh Amendment immunity because a suit against the state actor is tantamount to a suit against the state itself. *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985).  The State of Maryland has not waived such immunity for claims brought pursuant to § 1983.  Accordingly, Gavigan is immune from suit for actions taken in his official capacity.  To the extent that Sheppard sues Gavigan in his official capacity, Gavigan's Motion will be granted, and the Complaint will be dismissed against him in his official capacity.  However, the case will proceed against Gavigan in his individual capacity.

---

Dec. 12, 2017) and *Williams v. Dovey*, Civil Action No. DKC-15-1891, 2016 WL 810707, at \*2 n.6 (D. Md. Mar. 2, 2016)).

[4] That the ARP process ends with a referral to the IID, making a plaintiff's claims either exhausted or unavailable, has significant precedence in this District as outlined above. Had Sheppard, an incarcerated, unrepresented plaintiff, not had the wherewithal and opportunity to submit a copy of the dismissal of his ARP appeal noting the referral to IID, Gavigan may have succeeded in misleading the Court into believing that his administrative remedies remained unexhausted based solely on the failure to file a grievance with the IGO.

## IV.    CONCLUSION

For the foregoing reasons, Eigbokhan's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment is GRANTED.  Gavigan's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment is GRANTED in part and DENIED in part.  Gavigan's Motion is granted as to any claims against him in his official capacity; the Motion is otherwise denied.

A separate Order follows.

August 28, 2023
Date

LYDIA K. GRIGGSBY
United States District Judge